UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

HOWARD B. ACKERMAN,  )
         Petitioner,  )     2:10-cv-01088-GMN-GWF
                           )
vs.  )
                           )     **ORDER**
DIRECTOR HOWARD SKOLNICK, *et al.,*  )
         Respondents.  )
_____/

    This is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is proceeding with representation of counsel. Before the Court is respondents' Answer and petitioner's Reply and Supplemental Reply.

**I.    PROCEDURAL HISTORY**

    **A.    Background and Procedural History**

    Petitioner was accused of holding Kim Bonnell, a woman with whom he was sharing an apartment and had a personal relationship, against her will in their apartment and in his automobile and of assaulting her both physically and sexually over the course of a three-day period in January, 2003.[1] It is alleged that petitioner transported Ms. Bonnell, against her will across state lines from Nevada into California during the course of this episode. He was arrested in California on January

---

[1] The factual background, as summarized herein, was derived from respondents' Answer which relies on the respondents' opening brief on direct appeal and the declaration of warrant/summons in the "bindover packet" provided to the Court as exhibit 1 to the motion to dismiss filed on November 12, 2010. This factual background is not intended to be and is specifically not a finding of fact on the part of this Court. It is provided merely to inform the discussion of events and claims presented in these proceedings.
    The Court acknowledges petitioner's objection to the respondents' reliance on the statement of facts extracted from respondents' opening brief on direct appeal and the declaration of warrant as a statement of facts and his argument that use of such "unexhausted" facts is improper. However, because the use of these facts, as far as this Court is concerned, is merely to provide background and clarity about the basis of the claims to be addressed, the objection is overruled.

31, 2003, with Ms. Bonnell in his car.  He was charged in California with four felonies related to kidnaping across state lines, assault, false imprisonment and criminal threats, and was convicted on a negotiated plea on the charge of criminal threats.  Petitioner served time in a California prison before he was returned to Nevada and charged in the state court here for the same events.

On December 29, 2003, the State of Nevada filed an information in the Eighth Judicial District Court for the State of the Nevada ("District Court") charging petitioner, Howard B. Ackerman with one count of second degree kidnaping, two counts of first degree kidnaping, and one count of attempted sexual assault.  Exhibits to Mot. to Dismiss Ex. 2, ECF No. 9.[2]  After a jury trial, the jury returned a verdict finding petitioner guilty of count three – first degree kidnaping.  *Id*. Ex. 13.  The District Court sentenced petitioner to life with the possibility of parole after five years and issued its judgment of conviction on August 8, 2005.  *Id*. Ex. 18.  Petitioner appealed.  *Id*. Ex. 19.  On October 17, 2006, the Nevada Supreme Court affirmed petitioner's convictions.  *Id*. Ex. 23.

On April 12, 2007, petitioner filed a supplemental post-conviction petition in District Court.  *Id*. Ex. 23.  Subsequently, petitioner filed an amended post-conviction petition, a second amended post-conviction petition, and a third amended post-conviction petition.  *Id*. Exs. 27, 29, 30.  After holding an evidentiary hearing, the District Court denied post-conviction relief on January 7, 2009.  *Id*. Ex. 36.  Petitioner appealed the denial to the Nevada Supreme Court.  *Id*. Ex. 37.  On May 6, 2010, the Nevada Supreme Court affirmed the District Court's decision.  *Id*. Ex. 41.

Petitioner filed his federal Petition for Writ of Habeas Corpus in this Court on July 2, 2010.  ECF No. 1.  Respondents moved to dismiss the petition. ECF No. 8.  Petitioner then sought and was granted leave to file an amended or supplemental petition.  ECF Nos. 16, 19 and 24.  The Second Amended/Supplemental Petition was filed on May 27, 2011.  A second motion to dismiss was filed thereafter. ECF No. 27.  That motion was granted in part on March 12, 2003. ECF No. 31.  An answer to the surviving ground was filed on June 20, 2012 (ECF No. 36), to which petitioner replied (ECF Nos. 37 and 45).

---

[2] The exhibits referenced in this order are found in the court's record at ECF Nos. 9-12.  Any other exhibits will be identified specifically.

## II. DISCUSSION

Petitioner raises claims of ineffective assistance of counsel and double jeopardy violations.

### A. Legal Standard - Merits Review

<u>Habeas Corpus Standards</u>

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999); *see Williams v. Taylor*, 529 U.S. 362, 412–413, 120 S.Ct. 1495 (2000) (a state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts"). Therefore, this Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter,* 562 U.S. ___, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

With this standard firmly in mind, the Court considers petitioner's surviving claims for relief.

**B.   Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." *Premo v. Moore* 131 S.Ct. 733, 739 (U.S., 2011) *quoting Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S.Ct. 1411, 1419 (2009). "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Strickland v. Washington*, 466 U.S.668, 688, 104 S.Ct. 2052 (1984). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.* The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Id*. at 690.

1. Ground 1A - Failure to Investigate

This claims alleges petitioner's counsel was ineffective for failing to (1) adequately investigate the petitioner's allegations that the victim, Ms. Bonnell, arranged to have petitioner robbed at gunpoint, that the victim, suffered from a severe chemical addiction, had federal criminal involvement and had been a cooperating witness with federal authorities, (2) obtain and present the testimony of witnesses to the Terrible Herbst incident (the Lentz witnesses), and Ms. Andrews, a woman who knew Ms. Bonnell and would testify that Bonnell had admitted she had taken and sold all of petitioner's belongings from the apartment they shared.

Ms. Bonnell and petitioner had a personal relationship, with the two of them living together from October 2002 through January 2003. Ex. 7, Trial Transcript (TT), p. 55.[3]  Petitioner claims that items stolen from him during an armed robbery orchestrated by Ms. Bonnell, were found in Ms. Bonnell's apartment and that she was arrested "in connection with the robbery and an unrelated outstanding arrest warrant." Amended Petition (Amd. Pet.), p. 14. Petitioner alleges that because the "entire trial surrounded Ms. Bonnell's credibility," counsel had an obligation to investigate thoroughly by obtaining police reports and the testimony of a Ms. Andrews. *Id.*

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *See Strickland*, 466 U.S. at 691. Counsel's judgment

---

[3] References to page numbers in the trial transcript (TT) are the page numbers assigned by the court reported and found at the top right-hand corner of the page.

and decisions about the nature and extent of investigation are entitled to great deference and must be judged based on the information known at the time, rather than from the perspective of hindsight. *Id.* at 689.

This claim was presented to the Nevada Supreme Court on appeal from petitioner's post-conviction review. The state court applied the *Strickland* standard noting:

> Trial counsel testified that he investigated the alleged armed robbery and concluded that the claim was uncorroborated. Moreover, appellant has not demonstrated what additional evidence further investigation could have revealed or how it would have given rise to a reasonable probability of a different outcome at trial.
>
> * * *
>
> [A]ppellant argues that trial counsel was ineffective for failing to interview and procure witness L.A. [Lisa Andrews] for trial. Appellant fails to demonstrate deficiency or prejudice. Trial counsel testified that the contact information appellant provided for the witness was invalid. Moreover, appellant has failed to establish by a preponderance of the evidence to what the witness would have testified and therefore fails to demonstrate a reasonable probability of a different outcome at trial.
>
> * * *
>
> [A]ppellant argues that trial counsel was ineffective in not producing L.L [Laura Lentz] and D.L. [Deborah Lentz] as witnesses for trial. . . . Trial counsel testified that he wanted to preserve these witnesses for a companion case with which appellant had been charged. Which witnesses to call is a strategic decision that is "virtually unchallengeable absent extraordinary circumstances," circumstances which appellant has neither alleged nor demonstrated. Moreover, not only were these witnesses' written statements admitted at trial, but appellant was acquitted of the count to which these witnesses could have testified. He therefore fails to demonstrate a reasonable probability of a different outcome at trial. Accordingly, we conclude the district court did not err in denying this claims.
>
> * * *
>
> [A]ppellant argues that trial counsel was ineffective in not thoroughly cross-examining the victim regarding her prior convictions, alleged favorable treatment she received in exchange for testifying, and the ease with which the handcuffs could be removed. Appellant fails to demonstrate deficiency or prejudice. Appellant has presented no admissible evidence of the victim's criminal background, and trial counsel did questions the victim briefly about it at trial. Further, the prosecutor testified that he was unaware of any favorable treatment that the victim may have received in exchange for testifying in this case, nor has appellant presented any evidence in support of his claim.

1 Ex. 41. The Nevada Supreme Court concluded that denial of the claims by the trial court was not in
2 error. *Id.*
3 Relying on *United states v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988), *cert. d enied*,
4 488 U.S. 910, 109 S.Ct. 264 (1988); *Dows v. Wood*, 211 F.3d 480, 487-87 (9th Cir. 2000),
5 respondents argue that the claim is inadequate to warrant relief because petitioner has not provided
6 evidence that the witnesses, who counsel was alleged to have failed to interview and call to testify,
7 have not indicated by way of sworn declarations what their testimony would be and whether they
8 were available and willing to testify.
9 Petitioner has not presented such declarations or any other evidence to support his claim that
10 the witnesses were available and willing to testify. Moreover, a review of the transcript of the
11 evidentiary hearing and related depositions taken as part of that evidence-gathering effort in state
12 court suggests that counsel was unaware of Ms. Bonnell's involvement with federal authorities or
13 any benefits that she may have been promised in exchange for her testimony. Deposition of Green,
14 ex. 1 to ex. 31, p. 59, 63. Counsel testified that he was not able to impeach Ms. Bonnell with
15 questions about the purported armed robbery because she was never arrested or charged with the
16 crime. *See* Transcript of Evidentiary Hearing (Evid. Tr.), ex. 31, p. 29. Counsel further testified that
17 petitioner provided him with outdated or inaccurate contact information about Ms. Andrews, and that
18 he was unable to locate the witness. Evid. Tr., ex. 31, pp. 24-27; Deposition of Green, ex. 1 to ex.
19 31, pp. 81-82.
20 The transcripts further suggest that counsel had a strategic reason for not wanting to call the
21 Lentzs as witnesses, given that a separate prosecution was pending on charges of assault on a police
22 officer and eluding arising from the January 29, 2003, incident at Terrible Herbst. There was also
23 testimony that even though those witnesses had initially agreed to attend voluntarily, they changed
24 their minds, at least in part because of an unpleasant telephone conversation they had with the
25 prosecutor. *See* Deposition of Green, Ex. 1 to ex. 31, pp. 36, 81-84, 90-96.
26 Although, counsel admitted that he did not properly subpeona those witnesses to force their

7

attendance, *id.*, petitioner has not shown what the additional investigation might have revealed or that such investigation would have changed the outcome of the trial. He has not shown that the Nevada Supreme Court's decision on this claim was contrary to United States Supreme Court precedent or that the factual determinations were unreasonable. Thus, this claim will be denied.

### 2. Ground 1(B)(3) - Failure to Cross-examine

In this ground, petitioner alleges that counsel was ineffective for failing to effectively cross-examine the victim about the handcuffs used to restrain her in the closet overnight. Petitioner alleges that the handcuffs were mere sex-toys that could be released without a key simply by flipping a latch. Petitioner further complains that counsel was ineffective for failing to question the victim about her fear of petitioner compared to her fear of going to jail.

Respondents argue that petitioner has failed to offer any evidence that the victim was aware of the release latch on the handcuffs and suggest that she could have testified that she didn't know of the latch, thereby undercutting any beneficiat effect the cross-examination might have had for the defense. Respondents argue petitioner has failed to show any prejudice from this alleged deficiency.

The Nevada Supreme Court addressed this claim on post-conviction review, finding that petitioner had failed to demonstrate either deficiency or prejudice on this claim. The court noted

> [P]etitioner admitted that he testified at trial to the quick-release latch on the handcuffs, and the handcuffs were admitted into evidence so that the jurors had an opportunity to examine their release mechanism. Appellant therefore has failed to demonstrate a reasonable probability of a different outcome at trial.

Ex. 41.

Petitioner offers nothing new in his reply to rebut the respondents' arguments or to support his claim that counsel failed to effectively cross-examine the victim about the handcuffs or her fear of jail. The record supports the Nevada Supreme Court's determination. Petitioner will not obtain relief this claim.

### 3. Ground 1(B)(4) - Not Object to Prosecutorial Misconduct

Petitioner alleges that his counsel was ineffective for failing to respond to the prosecutor's

8

contact with the Lentzs, which effectively dissuaded them from attending the trial. Petitioner further complains that the prosecutor pursued the Nevada prosecution because he believed the California prosecution didn't go far enough.

Only if the prosecutor's actions are so pervasive as to infect the trial with unfairness such that the defendant is denied due process, will such actions violate the defendant's rights. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986). Although a prosecutor may not prosecute an individual for vindictive reasons, *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098 (1974), his discretion on what charges to pursue is broad. *U.S. v. Kent*, 649 F.3d 906, 915 (9th Cir. 2011) *citing U.S. v. Goodwin*, 457 U.S. 368, 382 102 S.Ct. 2485 (1982).

Here, petitioner cannot show prejudice where the defense counsel had not decided whether to call witnesses who were "dissuaded" from appearing after a conversation with the prosecutor and where petitioner was not convicted on the charge addressing the events to which they were witness. As to the suggestion that the prosecutor's decision to bring and pursue the charges against petitioner because he believed California had not been tough enough on him, there is no evidence to suggest that this was the case. Bald allegations, without any evidentiary support, cannot obtain habeas relief for the petitioner. *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995), *cert. denied*, 517 U.S. 1143 (1996).

    4.  Ground 1(B)(6) - No Objection to Hearsay Testimony

Finally, ground one alleges that counsel was ineffective because he failed to object to the hearsay testimony of a prosecution investigator that petitioner never had Cox cable service in his apartment, which contradicted petitioner's testimony about his possession of a Cox cable internet modem.

The Nevada Supreme Court determined that petitioner had been unable to demonstrate that he was prejudiced by counsel's failure to object because Ms. Bonnell had already testified that the apartment had internet service, undercutting the impact of the investigator's testimony. *See* Ex. 41.

Petitioner has not shown that the Nevada Supreme Court's determination of his ineffective

1  assistance of trial counsel claims was contrary to or an unreasonable application of clearly
2  established United States Supreme Court law. Neither has he shown that the Nevada Supreme
3  Court's factual determinations were unreasonable in light of the evidence before it. Petitioner is not
4  entitled to relief on ground one.

### B.    DOUBLE JEOPARDY

Petitioner contends that neither he, his trial counsel nor the prosecutor know upon what set of facts he was convicted. He argues that his rights to due process of law as guaranteed by the Fifth and Fourteenth Amendments, as well as his Sixth Amendment right to the effective assistance of counsel were violated because the Information charging petitioner with the crimes of First and Second Degree Kidnaping and Attempted Sexual Assault is duplicitous. He contends this is so because the Information failed to provide any specific facts defining each of the four separate charges and because his trial counsel failed to request a special verdict or specific jury instructions in order to allow the parties to know what specific facts constituted the individual crimes.

A charge is duplicitous if it joins two separate offenses into a single charge. 1 Charles A. Wright, 1A *Federal Practice and Procedure* § 142 (4th ed. 2012); *see U.S. v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005) ("One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense." (quoting *State v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001) (citation omitted)).

The Information charging petitioner alleged that he "did, on or between January 29 and 31, 2003, willfully, unlawfully, feloniously...." commit all four of the charges against him, including second degree kidnaping, first degree kidnaping for purposes of sexual assault, first degree kidnaping for purposes of sexual assault or murder and attempted sexual assault. *See* ex. 2.[4] There is no specification within the charging document to suggest when, during that time-frame, the specific acts

---

[4] It is of note, but perhaps not persuasive, that the criminal complaint lodged against petitioner in the justice court (ex. 1) does differentiate between the dates, alleging that on or about January 29 and 30, 2003 as to count one, second degree kidnaping, and "on or about January 31, 2003," as to counts two, three and four. The specific dates were indicated or delineated by hand into that document, however.

comprising the charges were alleged to have occurred, except as to the attempted sexual assault. *See* ex. 2.

Given these facts, petitioner is not alleging duplicitous counts. Rather, he complains that the same offense was charged multiple times because the alleged wrongs were one continuous course of conduct. Petitioner was convicted on a single count: Count Three, which alleged first degree kidnaping for purposes of sexual assault or murder. The petitioner fails to demonstrate that the evidence given at trial confused the jury so it could not differentiate between the events to which the charges applied, particularly where the only evidence of threats of murder related to the kidnaping that occurred on January 31, 2003, leading up to the arrest of petitioner in California.

Where the element of the purpose of the kidnaping is different, the charges are not duplicitous and do not create a chance for petitioner to be convicted of two different offenses on the same facts. The Information upon which petitioner was tried included a charge of first degree kidnaping for purposes of sexual assault (count two). Count three of that same information charged first degree kidnaping for purposes of sexual assault and/or murder. Ex. 2. Count three requires proof that petitioner committed the kidnaping for purposes of murder or sexual assault. This charge provides an element of proof that is not present in count two.

The Nevada Supreme Court denied relief on this claim noting that petitioner was only convicted of one count of the four charged and he was not facing retrial on the other count, despite the lack of a verdict on the second count of first degree kidnaping. Ex. 41. The court further noted that petitioner had not received multiple sentences on the charge, thereby failing to show the requisite prejudice to prevail on his ineffective assistance of counsel claim. *Id.*

The Double Jeopardy Clause affords a defendant three basic protections:" '[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *Ohio v. Johnson,* 467 U.S. 493, 498-499, 104 S.Ct. 2536, 2540 (1984) *quoting Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225 (1977); *North Carolina v. Pearce*, 395 U.S.

11

711, 717, 89 S.Ct. 2072, 2076 (1969). Double jeopardy is not present if the charges are different. One offense is different from another if each requires proof of a fact that the other does not. *Albernaz v. United States,* 450 U.S. 333, 339, 101 S.Ct 1137, 1142 (1981); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932).

Petitioner has not demonstrated that the charging document included duplicitous charges or that the failure of his attorney to seek a special verdict or jury instruction caused him any prejudice. As a result, he cannot show that the Nevada Supreme Court's denial of this claim was either contrary to or an unreasonable application of clearly established federal law. There is no claim that the factual determination of that court was unreasonable and no indication that would be the case. Petitioner shall be denied relief on this count of his petition.

           1.        <u>Ground 3A - Duplicate Prosecution in California</u>

Next, petitioner claims his rights guaranteed by the Fifth and Fourteenth Amendments were violated when the Nevada court refused to dismiss the case against him after he was arrested for, charged with and "was convicted in the state of California of identical factually based conduct which was re-litigated in [petitioner's] Nevada Criminal Trial" Amended Petition, p. 31.

This claims falls under the protections of the Double Jeopardy clause's prohibition against a second prosecution for the same offense after conviction, *Johnson,* 467 U.S. at 498, 104 S.Ct 2536; *see also United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079 (1976), and it was properly denied by the Nevada Supreme Court which concluded that the California conviction and the Nevada prosecution did not seek to punish identical conduct. Ex. 23. As that court pointed out, petitioner was convicted in California on a charge of criminal threats after he entered a *nolo contendre* plea. Where there was no trial before a jury or judge, jeopardy on the charge attaches at the time of the plea. *United States v. Faber*, 57 F.3d 873, 874-75 (9th Cir. 1995) (Jeopardy ordinarily attaches in a criminal proceeding when the court accepts a plea agreement.) *citing U.S. v. Smith*, 912 F.2d 322, 324 (9th Cir. 1990). The other charges of kidnaping, false imprisonment and assault were dismissed as part of the plea agreement. Under this scenario, jeopardy did not attach to the dismissed charges

because no evidence on them was heard by the court.  *See United States v. Martin Linen Supply Company,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353 (1977); *U.S. v. Tateo,* 377 U.S. 463, 474, 84 S.Ct. 1587, 1594 (1964) ("By settled interpretation the protection of the Double Jeopardy Clause does not attach before a jury is impaneled and sworn, or in a nonjury trial, before the court has begun to hear evidence.").

More to the point, however, as argued by respondents, the Double Jeopardy Clause does not bar successive prosecution brought by separate sovereigns.  *U.S. v. Lara*, 541 U.S. 193, 197, 124 S.Ct. 1628 (2004) *quoting Heath v. Alabama,* 474 U.S. 82, 88, 106 S. Ct. 422 (1985) (the Double Jeopardy Clause reflects the "common-law conception of crime as an offense against the sovereignty of the government"; when "a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences' ").  Here, the states of Nevada and California, as separate sovereigns, charged and convicted petitioner for violations of their own state laws.

This claim must be denied.  Petitioner cannot prevail because he has failed to show that the Nevada Supreme Court's decision was subject to reversal under 28 U.S.C. § 2254.

## III.   CONCLUSION

Petitioner has failed to demonstrate that the Nevada state courts' handling and denial of his claims was contrary to clearly established federal law or that the state courts' application of that law was unreasonable.  Petitioner has not shown that the state courts' factual determinations were unreasonable in light of the evidence presented.  Under the strictures of 28 U.S.C. § 2254, petitioner cannot obtain relief from this Court.

Should petitioner wish to appeal this decision, he must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

13

483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Amended/Supplemental Petition for Writ of Habeas Corpus (ECF No. 26) is **DENIED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.  The Clerk shall enter judgment accordingly.

**DATED** this 30th day of September, 2013.

_____
Gloria M. Navarro
United Stated District Judge